Good morning, Your Honors. My name is John Johnson. I'm here today appearing on behalf of Ms. Christy Pryor. I'd like to reserve three minutes for rebuttal. Ms. Pryor was receiving benefits under the Social Security Standards for a Child on the grounds that she had ADHD. She was later re-evaluated by the Social Security Administration under the adult standards and found that she could go back to work. The Social Security Administration has made no determination that there was medical improvement. Mrs. Pryor contends that she should be entitled to a continuation of her SSI disability benefits on the grounds of having an intellectual impairment. These standards, this is a section, Listing the evidence of substandard intellectual functioning along with a deficit of adaptive functioning with an IQ of 70 or below and also one other additional physical or mental impairment. The District Court noted that the government conceded that two of the three prongs in this showing that she had deficits in intellectual functioning. Can we step back just a little bit? Under Listing 12.05c, there are three requirements which you've described. The second of which is an IQ score of 70 or below. Yes, Your Honor. The only evidence that I see in the record measuring her IQ is in Dr. Acevedo's report, which the IJ accepted, and that was an IQ of 70. Did the ALJ discuss that? The ALJ did not discuss, did not mention that she had an IQ of 70. What the ALJ said was that all of the IQ scores were invalid. We contend that was error because neither Dr. Acevedo nor even the state agency doctors, Dr. Caruso, Radin, and the other guy, they did not say that those IQ scores were invalid. We contend that's error because if the judge believed that those IQ scores were invalid, he should have gave some reasons for doing that and there were none. I actually may be trying to help you with this question. The only IQ score of record is 70, which is reported in Dr. Acevedo's report. Is that correct? That's correct, Your Honor. The ALJ made no effort to say why that was wrong or bad. Indeed, she accepted every other part of Dr. Acevedo's report except that, correct? That's exactly right, Your Honor. He never mentioned the score of 70 at all. Your argument is that alone requires remand. I believe that does require a remand, Your Honor, to fully and fairly develop the record here. What else is there? Okay. The DISM, again, looks like this issue now, the focus really is on whether she met her burden of proof of showing deficits in adaptive functioning here. DISM-IV describes it as pretty basic, whether a person is capable of handling normal daily problems, affairs, and independent living. This young man, this young woman has been living with her mother. Her mother testified she has to take this young lady to the store here. She is not capable of independent living. This the court in the Gomez case, a district court decision, held that deficits of intellectual function can be demonstrated by circumstantial evidence such as going to special education, having poor grades, and working at an unskilled job. In Ms. Pryor's case, Dr. Azevedo mentioned that she had been going to special education, and she also had very poor grades, and she attempted to do some work for about two months for the Butte County Department of Behavioral Health, and then she had to quit her job. Didn't the ALJ determine that your client's seizure disorder caused severe limitations? Well, the ALJ mentioned in step number three that she had a seizure disorder, but it would appear from the record that her seizure disorder was under control. We're not really claiming that that is a severe impairment anymore. It would appear to be under control, Your Honor. What we are contending, though, is that while this Court mentioned in the Fanning case that if a person has other additional physical or mental impairments found at step number two, found to cause more than a minimal effect on a person's ability to work, this meets the additional criteria. And in this case, the ALJ mentioned that in addition to poor intellectual functioning, that she also had a PTSD disorder and an anxiety disorder. So we contend that that part of the criteria has been met with additional limitations, because Dr. Azevedo mentioned that this combination of her impairments caused her to have a marked — a moderate to marked limitation in her ability to handle job stresses and to adjust to changes in the work setting. We also contend that all of these elements were met before age 22. She was born in May of 1994, and she turned 22 at May of 2016. And all of these elements were met before Dr. Azevedo's report was done in 2013. So we contend that based upon the evidence here, that substantial evidence does not support the ALJ's finding that all of the elements of 12.05C were not met. Also we're contending that the ALJ erred by failing to resolve the conflict between Dr. Azevedo's report and the other state agencies' non-examiner's report. Dr. Azevedo said that she had a combination of problems here, low intellectual functioning, PTSD, and depression, whereas Dr. Caruso, the state's non-examining physician, said that her only impairments were an organic disorder and an anxiety disorder that only caused moderate limitations. And the judge, the ALJ, never resolved that conflict. We also contend that the ALJ failed to show, to discredit Mrs. Pryor's testimony that she had very severe mental impairments here. And he did this based upon her daily activities and also that there was evidence of medical improvement. While this Court has held in many cases that if a person has daily activities, they've got to show what really occupies a substantial part of the day. And she had a few activities, but it was relatively her mother that took care of everything here. And as to medical improvement, this Court has held in the Garrison case that a judge can't pick out a few episodes of medical improvement without looking at the overall record of her condition here. And in this case, the records from Butte County Mental Health shows that she had regular problems with emotional outbursts, emotional liability here, and the records show that in 2014, she had two episodes of 5150s where she was admitted because she was a danger to herself or other people here. So looking at the entire record here, there has been no medical improvement of her condition. She continued to have very severe mental impairments. We also contend that the administrative law judge erred when he failed to include Dr. Caruso's residual functional capacity finding here, that she had a marked limitation with regards to handling job stresses and handling job stresses. But the ALJ also erred by failing to consider even Dr. Caruso's finding that she had a moderate limitation with regards to concentrating over an extended period of time and ability to complete a normal week, a normal work day, and a normal week without interruption because of her psychological symptoms here. And we're also finally contending that the ALJ similarly erred when he failed to include those same limitations in his hypothetical question to the vocational expert, that all the ALJ found in the way of residual functional capacity and the limitations in his hypothetical was that she was limited to unskilled work that only required her to understand and carry out a one-step instruction and to occasionally deal with or interact with supervisors and co-workers. Those are the only limitations. And then he asked the vocational expert, can a person do any kind of work with these limitations? And the vocational expert said she could be a housekeeper, cleaner, or a hand packager. These job descriptions are included in an exhibit that was attached to the opening brief. This is a docket record number 14. We've asked the Court to take administrative notice of that. These jobs both required the capacity to do repetitive or continuous work. We contend that the ALJ erred by failing to consider those limitations because it would have an effect. It was not a harmless error. It would have an effect on, it was inconsistent with her ability to perform repetitive or continuous work. Do you seek a remand for correction of error or a remand directing the award of benefits? Well, we would contend that the record is complete and that all the issues have been addressed and all the elements of 12.05C has been met. And she should be, there should be an order for this government to restore her benefits. On the other hand, we argue alternately that her case should be remanded in order to have a full development of the record here, because there is, the judge never made a specific finding as to deficits of adaptive functioning. He just simply said that she was, had the residual capacity to do some kind of work. Thank you. All right. Let's hear from the other side. Good morning. May it please the Court. C. Modi on behalf of Andrew Sull, Commissioner of Social Security. Commissioner's non-disability determination in this case should be affirmed because it rests upon substantial evidence. This includes medical opinion evidence, which was unanimous in concluding that claimant could perform simple work. This evidence also includes the treatment records, which feature an endorsement from one of claimant's treatment providers that claimant should continue with education and employment as a form of a treatment recommendation, as well as claimant's demonstrated improvement within her symptoms when she was compliant with prescribed treatment. Let's focus on listing 12.05C. And with regard to the IQ score, the ALJ indicated that she doesn't qualify, or she hasn't met the criteria under paragraph C, because she does not have a valid verbal performance or full-scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation function. That seems pretty inadequate in light of the ALJ's acceptance of the IQ testing. How do you respond to that? Thank you, Your Honor. So as my colleague mentioned, government does concede that those prongs about the IQ score and the other impairment of 12.05C were not entirely accurate in the decision. But those issues are immaterial, because as noted earlier, claimant didn't fulfill her burden of meeting the threshold inquiry as part of the soliciting was that she had to show deficits in adaptive functioning manifesting themselves before she turned 22. So on that basis, the ALJ can ignore the three-step requirements, including IQ? Well, Your Honor, the first step is the... Can I have a yes or no? The ALJ, well, the ALJ in this case could ignore the IQ score, because it was not material to the 12.05C finding, Your Honor, because she did not meet the threshold step as part of this listing to show the deficits in adaptive functioning during the developmental period. But isn't our review limited to what the ALJ's analysis was, what the ALJ's reasons for denial? And if the reasons are inadequate, don't we send it back for a do-over? Well, Your Honor, I think there's sufficient evidence in the decision underpinning the ALJ's finding a step three that claimant did not meet this listing. I'd like to also note as well that this court in Gonzales v. Sullivan has not required a detailed articulation at step three about all the prongs and all the evidence that underlies that. Instead in Gonzales, this court has held that as long as there's evidence in the decision that supports the step three findings, so the evidence can be located anywhere in the decision, then that analysis is allowed. That sounds like an argument that we can affirm on any basis apparent in the record. Is that the argument? No, Your Honor, because I'm also... Because you cannot make that argument in this kind of case, can you? I'm not making that argument, Your Honor. I'm making the argument that there is... In this case and in immigration cases, we cannot affirm for any basis apparent in the record. We have to go through the checklist. Item two on the checklist is IQ. Seventy or below, satisfied. Correct? It's just a checklist. But the first step of that list, Your Honor, is the deficit-adaptive functioning prong. And as I was... But did the ALJ analyze that first step? Because you're arguing harmless error by saying, well, okay, we can see under the checklist the ALJ was wrong, but you know what? She didn't satisfy the introductory paragraph requirement anyway. So it does sound to me like an argument for affirmance on any basis in the record because I don't see any specific analysis of whether she met the introductory paragraph by the ALJ or did I miss it? Did the ALJ analyze that? The ALJ does not. The ALJ does a discussion, Your Honor, of her daily activities over her overall level of functioning. The ALJ, you are correct, Your Honor, does not specifically link that. There's no explicit statement in the decision that says... Then isn't that an argument for affirmance on any basis in the record? You're saying, oh, forget the fact that the checklist was done wrong, the three steps under 1205C, because the introductory paragraph was a criteria that she bore the burden on, right? Did I get your argument right so far? She bore the burden and she didn't meet that burden. That is the argument in part, Your Honor, and it's also an articulation issue, which is that I think this Court does not require the degree of articulation that's being suggested in terms of having to go through each prong and link the other. Sure. It doesn't have to be specific, but I didn't see an analysis on that that the government relied on. So that's why the panel is pressing you on isn't this an argument for an affirmance on any basis in the record? Can you show me in the ALJ's analysis where the significance of average intellectual functioning with deficits that manifest before the age of 22, where that's analyzed? The ALJ does discuss her daily activities to that point. In that step three and elsewhere in the decision, she does discuss what the claimant can do. And so that evidence does underpin the finding that the claimant does not meet... So it's kind of cobbling together discussions rather than saying, okay, here's the portion in the record where the ALJ did the analysis. I think the analysis is not explicitly set forth, but the overall finding that the claimant did not meet this listing, the evidence underpinning that overall finding that listing 1205 was not met is contained both in the decision and, of course, elsewhere in the record. And again, I will direct you to within the ALJ's decision, extra to record page 49, which cites claimant's admissions about her ability to prepare meals, her ability to perform household chores and shop, as well as her ability to engage in hobbies, such as playing basketball and swimming. There's also the evidence cited elsewhere in the ALJ's decision about her ability to... about her graduation from high school, which Dr. Azevedo had noted, and her desire to start college. And so all of this evidence in the decision, plus claimants, the records that we mentioned in our answering brief, such as the descriptions in her educational records that show that there were no concerns in her adaptive or daily living skills. These were noted by her educators in her various IEP reports. JUSTICE SCALIA. She was in special education, wasn't she? MR. ZUCKERBERG. Yes, Your Honor. JUSTICE SCALIA. Okay. MR. ZUCKERBERG. And so. But notably, her educational records also underscore that the educators and the team that put together her IEP, they noted that there was obviously a discrepancy between her academic achievement and her intellectual abilities. But they explicitly said that that discrepancy was not due to, in the report, they used the term mental retardation. So they did not link that discrepancy to an intellectual disability. So that was noted as part of the IEP plan. And so I think that further reinforces the lack of a 1205C fulfillment here. But so beyond. JUSTICE SCALIA. So you concede a lack of total compliance with the listing? MR. ZUCKERBERG. On whose part, Your Honor? JUSTICE SCALIA. The ALJ. MR. ZUCKERBERG. Yes. We agree that the Step 3 finding could and should have been better articulated. In an ideal scenario, that is correct. But we still maintain that the overall finding that the claimant was not disabled is still supported by substantial evidence despite that articulation, the lack of an ideal articulation based on the evidence underpinning the intact adaptive functioning skills both in the decision and elsewhere in the record. And so that is regarding the listing total 5C argument. I'd like to also proceed to addressing the issue of the various medical opinions. And I think this touches on something Judge Hawkins has mentioned about the IQ score. And, again, we note that the IQ score was not mentioned in the decision. But I think it's worth noting as well that the very same examining psychologist who assessed the IQ of 70 also at the same time still found the claimant could perform simple work. So the same examiner who assessed that score still said it didn't preclude her from working. And then, indeed, every physician who had looked at this record, there's no physician endorsing the claims of disability either at meeting a listing or saying that she couldn't perform any work at all. Instead, there's unanimity on the commissioner's side in that claimant could perform simple work. And the way and the ALJ's interpretation or the translation of these opinions into the RFC is entirely consistent with this court's precedence, Dubbs-Danielson v. Astro. And so there was no implicit rejection of these inclusions. The ALJ's RFC limiting claimant to only simple, unskilled work with occasional contact with others, as the district court noted, is an extremely limiting RFC that accommodates these moderate, mild, even marked restrictions that were assessed by the consultative examiner and the state agency reviewing physicians. And so there is no inconsistency under this court's precedent between the medical opinions about claimants' ability to perform simple work and the ALJ's RFC to that extent. And I also will note as well that when we're looking at the jobs identified as well, the jobs identified by the vocational expert and cited by the ALJ at Step 5, the representative occupations, were housekeeper and hand packager, which the DOT defines as, which the first law said required no contact with the public. And also the DOT also defines these as reasonable one job. So these are the most basic jobs available. These are only simple one- or two-step task jobs. And so this is not to say that there aren't any, you know, severe impairments or significant limitations flowing from claimant's impairments. Clearly the record establishes that. But the ALJ took that on board, crafted an RFC that is extremely limiting, and found that a claimant could work based on impairment — based on occupations that themselves were not at all demanding. And the final point, I think, gets to the first thing my colleague mentioned, which was claimants' childhood granted benefits and saying that they're — and somehow implying that they were — that there was some — they should have carried on. But that ignores that under the Act, Congress has directed the commissioner to perform a de novo determination of disability eligibility once a claimant attained the age of 18. The commissioner then applies the adult standards, not the child standards. And so — and as this Court has held in an unpublished case, but the ALJ determines the adult disability without paying deference to the childhood finding. I mean, it's a different — different rules. Here, also different impairments. She was granted benefits based on ADHD, which isn't an issue here. She was notably not granted benefits for an intellectual disability, which are our claims now. So we're looking at a completely different set of standards, different set of impairments. And so to assume that there's some carryover essentially renders the redetermination provisions in the Act meaningless. And so we would ask that not be adopted here. So if there are no further questions — All right. Thank you. It appears that we don't have any questions. Thank you very much for your argument. And now, Counsel, Mr. Johnson, I think there's still time left. All right. And next time you visit us, you can stay at counsel table until the argument is concluded. Oh, thanks. I just want to address a couple of things. The opposing counsel mentions that the prior determinations by Social Security when she was a child is really irrelevant. But we contend that that's really not the case. School records show that she had a poor time in school, a lot of discipline, a lot of conflicts, that there's the IEP plan that said she had some serious problems here. But the most significant evidence, I believe, is a determination by Dr. Groves, a state agency physician in May of 2009 said that he had — that she had a marked limitation in acquiring and using information and interacting with others. So there is a foundation going way back when of an innate inability to process information. She had a lot of difficulty with that. And this is consistent with what Dr. Acevedo found. He went into really some explanation here that she appeared to be slow and that she really had difficulty processing information. This all supports the objective findings that she had an IQ of 70. So there's some serious problems. Also, a consul made an unusual argument about Dr. Acevedo's finding that she had an IQ of 70. The consul argued in their brief that the judge did not — ALJ did not have to accept that because it was not an opinion. It was just objective laboratory findings. Well, we contend that this was — this is the foundation that the administration really erred because they disregarded medical opinion, even from their own sources here, without explanation, as they're required to do all the way through it. In the Robbins case and the DeLorme case, they can't just casually ignore material evidence or disregard medical evidence here and have their decision affirmed. Didn't Dr. Acevedo also say that the test results might actually understate her actual abilities? But if you were to reject that, perhaps an explanation would have been warranted. Well, she had really multiple problems in addition to intellectual deficits and adaptive functioning here. Again, she had to go switch schools here because there was so much discipline problems. She had to transfer to the Proxbeck School to continue her special education. And all the way through to the end, she was not functional, again, because she was demonstrated by the 5150s by her conduct. She had really serious problems, intellectual problems here and emotional problems. All right. Thank you very much. And we think that all of the requirements of 12.0 FAIC have been met. Thank you, counsel. The matter is submitted for decision, and we're adjourned for today. All rise.
judges: Siler, Hawkins, Nguyen